IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-513-D

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>REYMUNDO CAMERO-CASTANEDA, )<br>  a/k/a "Manuel Marroquin-Diaz" )<br>  a/k/a "Merlin Camero Ortiz" )<br>)<br>Defendant. ) | **ORDER** |

On November 17, 2020, a federal grand jury in the United States District Court for the Eastern District of North Carolina charged Reymundo Camero-Castaneda ("Camero-Castaneda" or "defendant") with being an alien found in the United States after having been excluded, deported, or removed from the United States on three different occasions and not having obtained the consent for admission thereto in violation of 8 U.S.C. § 1326(a). See [D.E. 10]. On March 22, 2021, Camero-Castaneda cited his status as a 17 year old during his 2005 removal proceeding, and moved to dismiss the indictment because he had never been deported lawfully. See [D.E. 27]. On April 19, 2021, the government responded in opposition [D.E. 31]. On April 26, 2021, Camero-Castaneda replied [D.E. 34]. As explained below, Camero-Castaneda's deportations or removals were lawful. Thus, the court denies Camero-Castaneda's motion to dismiss.

I.

Camero-Castaneda is a citizen and national of Mexico. See [D.E. 1] ¶ 4(a). Camero-Castaneda was born on April 6, 1988. See Ex. 1 [D.E. 31-1] 2; cf. [D.E. 1] ¶ 4(b). When he was a minor, Camero-Castaneda entered the United States without immigration inspection. See [D.E. 1] ¶ 4(c); [D.E. 31] 1 & n.1.

On April 16, 2004, the Raleigh Police Department responded to a shots fired call. See Ex. 1 [D.E. 31-1] 3. A group of teenagers told officers that Camero-Castaneda and another Hispanic male yelled racial epithets at them and that one Hispanic male pulled an automatic handgun from his waistband and fired shots into the air. See id. at 3–4, 6, 8. One witness identified Camero-Castaneda and told officers that Camero-Castaneda was a member of the VDM (Very Dangerous Mexicans) gang. See id. at 8. Officers contacted Camero-Castaneda, then age 16, and his mother, Juliana Castaneda. See id. at 2, 7. On May 27, 2004, authorities arrested and interviewed Camero-Castaneda, and Camero-Castaneda confessed to carrying a concealed firearm. See id. at 9. On October 18, 2004, the Wake County District Court convicted Camero-Castaneda as an adult for carrying a concealed firearm. See Ex. 2 [D.E. 31-2] (judgment). The court sentenced Camero-Castaneda to thirty days' imprisonment, suspended, and six months' supervised probation. See id. at 1.

On July 22, 2005, U.S. Immigration and Customs Enforcement ("ICE") arrested Camero-Castaneda in Raleigh, North Carolina, during an operation targeting street gangs. See [D.E. 31] 2. ICE processed Camero-Castaneda for removal as an inadmissible alien pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). See [D.E. 1] ¶ 4(d). On September 13, 2005, an immigration judge in Atlanta, Georgia, ordered Camero-Castaneda removed from the United States to Mexico. See Ex. 3 [D.E. 31-3] (order of removal). On September 27, 2005, ICE removed Camero-Castaneda to Mexico at Laredo, Texas. See Ex. 4 [D.E. 31-4] 2 (removal warrant). ICE warned Camero-Castaneda of the penalties for reentry and issued a ten-year ban on reentry. See id. at 3. Camero-Castaneda was 17 years old during the 2005 removal proceedings.

On a date unknown between September 27, 2005, and August 2, 2011, Camero-Castaneda reentered the United States without the consent of the Attorney General or the Secretary of

2

Homeland Security. See [D.E. 1] ¶ 4(g). On August 2, 2011, police arrested Camero-Castaneda in Wake County, North Carolina. See id. ¶ 4(h). At the Wake County jail, ICE 287(g) program officers biometrically identified Camero-Castaneda as a removed alien. See id. On August 10, 2011, an immigration official ordered Camero-Castaneda removed from the United States. See Ex. 5 [D.E. 31-5] 1 (order of removal). On September 15, 2011, ICE removed Camero-Castaneda to Mexico at Brownsville, Texas. See id. at 2. ICE again warned Camero-Castaneda of the penalties for reentry and issued a twenty-year ban on reentry. See id. at 3.

On October 5, 2011, Camero-Castaneda reentered the United States at Brownsville, Texas, without the consent of the Attorney General or the Secretary of Homeland Security. See Ex. 6 [D.E. 31-6] 1 (order of removal). On October 7, 2011, the U.S. Border Patrol ("Border Patrol") arrested Camero-Castaneda near Sarita, Texas, and identified him as a previously removed alien. See [D.E. 1] ¶ 4(l). On October 8, 2011, in Kingsville, Texas, Border Patrol ordered Camero-Castaneda removed by reinstatement of prior removal. See id. ¶ 4(m); Ex. 6 [D.E. 31-6] 1. On October 11, 2011, Camero-Castaneda was found guilty of illegal reentry and sentenced to seven days' time served. See [D.E. 31] 3. On the same date, ICE removed Camero-Castaneda to Mexico. See Ex. 6 [D.E. 31-6] 2. ICE again warned Camero-Castaneda of the penalties for reentry and issued a twenty-year ban on reentry. See id. at 3.

On a date unknown between October 11, 2011, and October 22, 2020, Camero-Castaneda reentered the United States without the consent of the Attorney General or the Secretary of Homeland Security. See [D.E. 1] ¶ 4(o).[1] On October 22, 2020, local authorities arrested Camero-

---

[1] On April 25, 2012, Camero-Castaneda was convicted in Wake County District Court of assault on a female. See [D.E. 7] 3. He was convicted under the alias Manuel Marroquin-Diaz. See id.

3

Castaneda in Wake County, North Carolina. See id. ¶ 6. Fingerprints identified Camero-Castaneda as a previously removed alien, and ICE lodged a detainer. See id.

On November 18, 2020, a grand jury in the Eastern District of North Carolina indicted Camero-Castaneda for illegal reentry in violation of 8 U.S.C. § 1326(a). See [D.E. 10]. On March 22, 2021, Camero-Castaneda moved to dismiss his indictment, arguing that his 2005 deportation was unlawful because he was a minor. See [D.E. 27].

## II.

Rule 12 provides a defendant with the ability to file a motion alleging "a defect in the indictment or information." Fed. R. Crim. P. 12(b)(3)(B). To overcome a Rule 12 motion, the indictment must include every essential element of the offense. See United States v. Perry, 757 F.3d 166, 171 (4th Cir. 2014). "The sufficiency of an indictment is determined by practical, not technical, considerations." United States v. Sutherland, 656 F.2d 1181, 1197 (5th Cir. 1981); see United States v. Cobb, 905 F.2d 784, 790 (4th Cir. 1990). An indictment is adequate so long as it sufficiently apprises the "defendant [of] all that he needs to show for his defense" and is sufficiently specific to protect against double jeopardy. Cobb, 905 F.2d at 790 (quotation omitted); see United States v. Missler, 414 F.2d 1293, 1297 (4th Cir. 1969). An indictment "must include every essential element of an offense," and suffices if it sets "forth the offense in the words of the statute itself[.]" Perry, 757 F.3d at 171 (quotation omitted); see United States v. Burks, 746 F. App'x 191, 198 (4th Cir. 2018) (unpublished). If the indictment meets this standard, it is valid on its face and the court may not review the sufficiency of evidence supporting the indictment. See United States v. Wills, 346 F.3d 476, 488–89 (4th Cir. 2003). "A district court may dismiss an indictment under Rule 12 where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." United States v. Engle, 676 F.3d

4

405, 415 (4th Cir. 2012) (quotation omitted); see United States v. Hill, 700 F. App'x 235, 236 (4th Cir. 2017) (unpublished). Moreover, "a court cannot grant the motion to dismiss under Rule 12 if a defendant's legal contentions are inextricably bound up with the facts of the case." United States v. Regaldo, 497 F. Supp. 3d 56, 58 (E.D.N.C. 2020) (cleaned up).

## A.

Camero-Castaneda contends that he was a minor during his 2005 removal proceedings and that ICE should have treated him as a minor. See [D.E. 27] 3–5. Camero-Castaneda argues that in treating him as an adult, ICE deprived Camero-Castameda of the legal safeguards afforded to minors during removal proceedings. See id. Camero-Castaneda also contends that the immigration judge improperly failed to inquire into Camero-Castaneda's status as a minor. See [D.E. 34] 2.

The government responds that Camero-Castaneda was not a minor under the INA. See [D.E. 31] 4–5. In support, the government argues that because Camero-Castaneda was convicted as an adult in state court, ICE properly treated Camero-Castaneda as an adult in the immigration proceedings. See id.

The Flores Settlement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [Immigration and Naturalization Services] [("]INS["")]." Flores v. Lynch, 828 F.3d 898, 901 (9th Cir. 2016) (quotation omitted).[2] Under the Flores Settlement, minors who "have been 'emancipated' by a state court or convicted and incarcerated for a criminal offense as an adult are not considered minors." Stipulated Settlement Agreement at Ex. 2 ¶ (a), Flores v. Reno, No. CV 85-4544-RJK(Px) (C.D. Cal. Jan. 17, 1997) [hereinafter "Flores Settlement"]; see id.

---

[2] In 2002, Congress abolished the INS and transferred most of the INS's immigration functions to the Department of Homeland Security ("DHS"), which includes ICE. See Lynch, 828 F.3d at 904.

5

¶ 4 ("The term 'minor' shall not include . . . an individual who has been incarcerated due to a conviction for a criminal offense as an adult."); Lynch, 828 F.3d at 902. "Such individuals must be treated as adults for all purposes." Flores Settlement at Ex. 2 ¶ (a).

Under the INA, a "conviction" means "a formal judgment of guilt of the alien entered by a court . . ." 8 U.S.C. § 1101(a)(48)(A). A juvenile alien convicted as an adult in state court has a "conviction" under the INA. See Lecky v. Holder, 723 F.3d 1, 6 (1st Cir. 2013); Rangel-Zuazo v. Holder, 678 F.3d 967, 968–69 (9th Cir. 2012); Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1279 (11th Cir. 2009); Savchuck v. Mukasey, 518 F.3d 119, 122 (2d Cir. 2008); Vargas-Hernandez v. Gonzales, 497 F.3d 919, 922–23 (9th Cir. 2007); Vieira García v. I.N.S., 239 F.3d 409, 412–14 (1st Cir. 2001) ("Once adjudicated by the state court, as either a juvenile or an adult [this court is] bound by that determination.").

Camero-Castaneda was 17 years old during his 2005 removal proceedings. At the time, he had an adult conviction for carrying a concealed firearm. See Ex. 2 [D.E. 31-2]. The court sentenced Camero-Castaneda to thirty days' imprisonment, suspended, and six months' supervised probation. See id. at 1. Thus, under the Flores settlement, the INS properly treated Camero-Castaneda as an adult in his 2005 removal proceedings.

B.

In order to convict a defendant of illegal reentry pursuant to section 1326(a), the government must prove the following three elements beyond a reasonable doubt: (1) the defendant is an alien; (2) the defendant was "denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (3) the defendant entered, attempted to enter, or was found in the United States without the consent of the Attorney General. 8 U.S.C. § 1326(a). Sometimes, a defendant may collaterally attack an underlying

6

deportation order when charged with illegal reentry. See id. § 1326(d); see, e.g., United States v. Mendoza-Lopez, 481 U.S. 828, 839–43 (1987). In order to collaterally attack an underlying deportation order, the defendant alien must demonstrate that: "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); see United States v. Palomar-Santiago, 141 S. Ct. 1615, 1619–20 (2021); United States v. Guzman-Velasquez, 919 F.3d 841, 845 (4th Cir. 2019); United States v. Moreno-Tapia, 848 F.3d 162, 166 (4th Cir. 2017); United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005). The defendant must satisfy all three elements to prevail. See Palomar-Santiago, 141 S. Ct. at 1620–21; United States v. Herrera-Pagoada, 14 F.4th 311, 314 (4th Cir. 2021); El Shami, 434 F.3d at 663.

Camero-Castaneda argues that because he was a minor during his 2005 removal proceedings, he should not have to meet the three-part test under section 1326(d). See [D.E. 27] 7–8. Having concluded that Camero-Castaneda was an adult for purposes of the 2005 removal proceedings, the court rejects this argument.

Alternatively, Camero-Castaneda contends that he satisfies the three elements under section 1326(d), proving his 2005 deportation unlawful. See id. at 8–11. The first element of collateral attack requires that a defendant "exhausted any administrative remedies that may have been available to seek relief against the order[.]" 8 U.S.C. § 1326(d)(1). An alien can appeal his removal order to the Board of Immigration Appeals ("BIA"). See 8 C.F.R. § 1003.3(a). "An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under [section] 1326(d)(1)." United States v. Chavez-Alonso, 431 F.3d 726, 728 (10th Cir. 2005); see United States v. Soto-Mateo, 799 F.3d 117, 120–24 (1st Cir. 2015) (holding that where

7

"the government produces a written and signed waiver of rights—the defendant must carry the burden of showing that the waiver was infirm."); Richardson v. United States, 558 F.3d 216, 221 (3d Cir. 2009) (same).

Camero-Castaneda argues that he exhausted administrative remedies available to him because the immigration judge failed to inform him of his right to appeal and did not ask him whether he wanted to appeal. See [D.E. 27] 8–9; [D.E. 34] 3. The government responds that Camero-Castaneda did not exhaust his administrative remedies when he waived his right to appeal. See [D.E. 31] 6.

Camero-Castaneda signed a written waiver waiving his right to appeal the order of deportation at the time of his 2005 removal proceedings. See Ex. 7 [D.E. 31-7] ¶ 3. The waiver advised Camero-Castaneda of his right to appeal. See id. Thus, Camero-Castaneda failed to exhaust his administrative remedies.

The federal circuit courts are split concerning whether an alien must establish exhaustion of administrative remedies when an immigration judge fails to advise the alien that he is eligible for voluntary departure, and the United States Court of Appeals for the Fourth Circuit has yet to address the circuit split. Cf. Herrera-Pagoada, 14 F.4th at 319–21, 319 n.7 (analyzing the issue regarding fundamental unfairness but not exhaustion). Camero-Castaneda, however, contends that the immigration judge failed to inform him of his appeal rights, not the availability of voluntary departure. Moreover, Camero-Castaneda does not argue a lack of knowledge or voluntariness in waiving his appeal rights. Here, Camero-Castaneda waived his right to appeal, thereby failing to exhaust his administrative remedies and rendering him unable to prove the first element under section 1326(d).

The second element under section 1326(d) requires that "the deportation proceedings at

8

which the order was issued improperly deprived the alien of the opportunity for judicial review[.]" 8 U.S.C. § 1326(d)(2). "[B]ecause exhaustion is a valid precondition for judicial review . . . a knowing and voluntary failure to exhaust would validly waive the right to judicial review." United States v. Sosa, 387 F.3d 131, 137 (2d Cir. 2004).

Camero-Castaneda contends that the immigration judge failed to provide him with proper notice, depriving him of judicial review. See [D.E. 27] 9; [D.E. 34] 3. The government responds that Camero-Castaneda had notice of the opportunity to appeal the immigration judge's decision, but waived his opportunity for judicial review. See [D.E. 31] 6.

Camero-Castaneda waived in writing his right to judicial review. See Ex. 7 [D.E. 31-7] ¶¶ 3, 8, 11. The waiver states, inter alia, "I understand that I have a right to appeal." Id. ¶ 3. Camero-Castaneda waived his right to judicial review and thereby voluntarily failed to exhaust his administrative remedies. Cf. Hamer v. Neighborhood Hous. Servs. of Chi., 138 S. Ct. 13, 17 n.1 (2017) ("waiver is the intentional relinquishment or abandonment of a known right") (quotations omitted). Thus, Camero-Castaneda was not deprived of the opportunity for judicial review, and he cannot prove the second element under section 1326(d).

The third element requires that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). "To demonstrate fundamental unfairness, a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result." El Shami, 434 F.3d at 664; see Herrera-Pagoada,14 F.4th at 316; United States v. Lopez-Collazo, 824 F.3d 453, 460 (4th Cir. 2016). "Due process requires, at a minimum, that an alien be given (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." Lopez-Collazo, 824 F.3d at 461 (quotation omitted); see Herrera-Pagoada, 14 F.4th at 321; El Shami, 434 F.3d at 665. To show

9

prejudice, a defendant "must show that, but for the errors complained of, there was a reasonable probability that [defendant] would not have been deported." El Shami, 434 F.3d at 665; see Lopez-Collazo, 824 F.3d at 462. The defendant "must link the actual prejudice he claims to have suffered to the specific due process violation at issue." Lopez-Collazo, 824 F.3d at 462.

Camero-Castaneda attacks his 2005 removal proceedings and contends that as an unaccompanied minor he was entitled to procedural protections under the Flores Settlement and the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008). See [D.E. 27] 4–5, 10. The government responds that neither the Flores Settlement nor the TVPRA applied to Camero-Castaneda during his 2005 removal proceedings. See [D.E. 31] 7–8.

As discussed, Camero-Castaneda was an adult for purposes of his 2005 removal proceedings. Furthermore, Camero-Castaneda was not an unaccompanied minor. His mother was present with him in North Carolina. See Ex. 1 [D.E. 31-1] 7. The Flores Settlement also does not help Camero-Castaneda given his adult conviction. See Flores Settlement ¶ 4, Ex. 2 ¶ (a). Furthermore, the TVPRA did not apply to Camero-Castaneda in 2005 because Congress did not enact the TVPRA until 2008.

Camero-Castaneda also argues that he suffered prejudice because had he been treated as a minor, he would have qualified for Special Immigrant Juvenile Status ("SIJS"), granting him permanent residency and preventing his deportation in 2005. See [D.E. 27] 4–5, 11; [D.E. 34] 4–5. The government disagrees. See [D.E. 31] 8.

To qualify for SIJS, an immigrant must be "declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court

located in the United States[.]" 8 U.S.C. § 1101(a)(27)(J)(i). The immigrant also must be unable to be reunified with one or both of his parents "due to abuse, neglect, abandonment, or a similar basis found under State law[.]" Id.; see also 8 C.F.R. § 204.11.

In 2005, Camero-Castaneda's mother was present with him in North Carolina. See Ex. 1 [D.E. 31-1] 7. Moreover, no evidence suggests that Camero-Castaneda could not be reunited with her due to abuse, neglect, or abandonment. Thus, Camero-Castaneda has not demonstrated prejudice in being denied the opportunity to pursue SIJS in 2005. Accordingly, Camero Castaneda has not satisfied the third element under section 1326(d).

Alternatively, Camero-Castaneda does not collaterally attack his two 2011 deportations. Cf. [D.E. 27]. Rather, Camero-Castaneda appears to assume that his 2011 deportations were unlawful because he should have been granted permanent residency in 2005. Cf. id. at 4–5, 11. The court declines to accept this counterfactual universe. Moreover, even if Camero-Castaneda were to prove his 2005 deportation unlawful, that would not render his 2011 deportations unlawful. Given Camero-Castaneda's two lawful deportations in 2011, his motion to dismiss the indictment fails.

III.

In sum, the court DENIES defendant's motion to dismiss the indictment [D.E. 27].

SO ORDERED. This 26 day of October, 2021.

JAMES C. DEVER III
United States District Judge